## HOWARD *v.* HANDY AND JOHNSON.

Where an entry is made by a mortgagee to foreclose his mortgage, under sec. 14, chap. 131, Rev. Stat., possession may be held by him, through the mortgager as his tenant; and such possession, being actual and peaceable, is as good as though held by the mortgager in person.

Publication of notice of an entry to foreclose, in some newspaper printed in the county, according to the provisions of said fourteenth section, is a sufficient notice to all interested that the foreclosure has been commenced.

The assignee of a mortgage takes, by the assignment, all benefits to be derived from any entry by the mortgagee to foreclose.

IN EQUITY. The bill charges that the defendant, Jeremiah Johnson, being the owner of a certain lot of land, together with the rope-walk and machinery pertaining thereto, and other buildings thereon, situated in Portsmouth, on the first day of October, 1850, mortgaged the same to one William B. Vincent, with a condition to pay to Vincent, his heirs or assigns, the sum of $1,644.78, according to the tenor of Johnson's note for that sum, dated the same day, and payable to Vincent or order, on demand, with interest:

That afterwards, on the 14th day of January, 1852, in pursuance of a bargain made and completed long before that time, Vincent assigned and transferred the note and mortgage, and his interest in the estate, to the defendant, John N. Handy, and to one Jeremiah M. Mathes, and that Mathes has since transferred and assigned his interest in the premises to Handy:

That on the 13th day of April, 1850, Johnson was indebted to the plaintiff in the sum of $280.51, upon a promissory note of that date, payable in six months: That on the 27th day of January, 1851, a suit was commenced by the complainant upon said note, and all the right, title and interest of Johnson in the premises mortgaged, were upon that day attached on the writ: That at the February term of the Common Pleas, 1851, judgment was recovered in the suit for $288.92 debt, and $16.23 costs: That execution was forthwith taken out upon the judgment, a levy seasonably commenced, and on the 7th day of June, 1851,

the officer duly sold to the complainant, at public auction, for the sum of $321, all the right in equity which Johnson had on the 27th day of January, 1851, of redeeming the property ; and on the same day the sheriff made and delivered to the complainant a deed of the premises, which was afterwards duly recorded, and the execution, with the officer's doings thereon, was returned at the September term of the court, 1851 : That more than one year has elapsed since the delivery and recording of the sheriff's deed, but that the ·property has never been redeemed by Johnson, or any other one, nor any part of the complainant's debt been paid.

The bill further charges, that on the 15th day of March, 1852, the complainant, by his attorney, called upon Johnson, and Handy and Mathes, and offered Handy and Mathes to redeem the property, by the payment of the amount due and all lawful expenses, but they refused to accept the same ; that afterwards he repeatedly made the same offer and tender of payment, particularly to Handy, on the 14th of June, 1853 ; and that he has always been ready to pay the same, if he could ascertain the amount due; but that Handy and Mathes, and afterwards Handy, utterly refused to state what was due on the mortgage, or to receive any money in redemption :

That the transfer and assignment of the mortgage from Vincent was taken at the request of Johnson, and for his benefit ; that Handy and Mathes, and afterwards Handy, in receiving the assignment, and in holding the same, acted as agents for Johnson, and that the mortgage is still holden by Handy, either in whole or in part, for the benefit of Johnson : That it was agreed between Johnson and Handy that the mortgage should be foreclosed in the name of Vincent, for the purpose of cutting off the creditors of Johnson, and that the same should be held by Mathes and Handy, or by Handy, for the use and benefit of Johnson ; and the complainant has been informed that, in pursuance of the agreement, some attempt was made by Mathes and Handy, or by Handy, to foreclose the mortgage, but that the same was never lawfully foreclosed.   That Johnson, ever since the year 1849,

and long before, has been in the peaceable possession of the property.

The bill then sets forth the pretences of the defendants; that the mortgage was purchased of Vincent, and the full amount of the note and interest paid for the same; that this was done without any request from Johnson, and without any understanding or agreement with him, or promise to him whatever: That the mortgage has been legally foreclosed, and no part of it has ever been paid by Johnson.

The bill then specifically interrogates the defendants, as to all the matters charged, in general terms.

The bill prays that an account may be taken of what, if any thing, is now due on the mortgage, and also for an account of the rents and profits that have been, or might have been received by Mathes and Handy, or Handy; that any pretended foreclosure may be set aside as illegal, fraudulent, and void; that the complainant may be permitted to redeem the premises, on payment of any thing that may be due on the mortgage, and the defendants be decreed to deliver possession to the complainant, upon such payment being made. The bill also contains a prayer for general relief.

The defendants severally answered the bill.

Johnson, in his answer, admits that he was indebted to the complainant, as set forth in the bill, and that owing to his inability the debt had never been paid.

He admits the execution of the mortgage to Vincent, and the assignment by Vincent to Mathes and Handy on the 14th day of January, 1852, and the subsequent transfer by Mathes of his interest to Handy.

He states that he has no knowledge and can not answer whether the complainant ever made any tender to Mathes and Handy, or to Handy alone, of the amount due upon the mortgage, or whether Handy refused to make known the amount due, or to receive the money.

He denies that Mathes and Handy, or either of them, took

the assignment of the mortgage for him, or for his benefit, or at his request ; or that there was ever any understanding or agreement that he was to have the benefit of the assignment or of the property ; or that there was ever any agreement that the mortgage should be foreclosed for the purpose of cutting off his creditors, or for him to have the property ; that he had been informed, and believes it to be true, that the mortgage was lawfully foreclosed by Vincent, and that Mathes and Handy paid Vincent $1,752.47 for the mortgage.

He denies that there was ever any understanding or agreement between him and any of the parties, that the mortgage should be foreclosed in any way for his benefit, or that he has any interest in the property.

He admits that he was in possession of the premises in 1849, and for many years before, and up to the time that Vincent entered to foreclose, on the 14th day of January, 1851 ; but that he has never been in possession of the premises since that day, or had any interest in them except as tenant : That he occupied them as tenant of Vincent under a lease for one year, from January 14, 1851, to January 14, 1852 : That since that time he and Handy have occupied them as co-partners, under a lease from Handy. That nothing has ever been paid on the mortgage, or towards redeeming the property.

Handy, in his answer, admits the execution of the mortgage from Johnson to Vincent, and alleges that Vincent, on the 14th day of January, 1851, took peaceable possession of the premises, publicly, in the presence of witnesses, for the purpose of foreclosing the mortgage for condition broken, and continued in the actual, peaceable possession thereof for one year, then next ensuing, and gave notice of the same in the Portsmouth Journal, as required by statute : That Johnson, during that year, held the premises under Vincent, as his tenant, by lease from him.

He admits that he and Mathes took an assignment of the mortgage from Vincent, on the 14th day of January, 1852, but avers that it was for a good and valuable consideration, and that

they then entered and took actual and peaceable possession of the premises, for the purpose of perfecting the foreclosure commenced by Vincent, and that they held actual, peaceable possession thereof, claiming title thereto, until the 14th day of January, 1853, when Mathes released all his title to Handy; and that Handy has held actual, peaceable possession from that time until the filing of this answer, January 30, 1857. That the amount paid to Vincent for the mortgage was $1,752.47, and that it was paid in cash on the day of the assignment.

He admits that Johnson was indebted to the complainant, as stated in the bill, and that the equity of redemption was sold, as therein stated, and a deed given to the complainant; and that the debt has never been paid.

He denies that the complainant at any time, till the 14th of June, 1853, offered to redeem the property by paying the amount of the mortgage; but he admits that on that day such an offer was made, and that he refused to give any account of what was due on the mortgage, or to recognize the right of the complainant to redeem the premises: That he then claimed and now claims to hold the premises as his absolute property.

He denies, specifically, that there was ever any understanding or agreement that Johnson should have any interest in the property, or that the mortgage was purchased of Vincent in any way for the benefit of Johnson, or at his request; or that the forclosure was made to cut off the creditors of Johnson; or that Johnson was to have any privilege of redeeming the property, or any share in the income or profits thereof.

He admits that Johnson was .in possession of the property in 1849, and up to January 14, 1851, but he denies that he has ever been in possession since, except as tenant; that Johnson has not redeemed the premises, because he has not had the means to do it, and that he, Handy, is sole owner of the same, in his own right, with no trust or understanding that it is held for any one but himself.

Both of the defendants deny all unlawful combination or confederacy.

To the answers there was a general replication, and testimony has been taken by both parties, which will be stated, so far as necessary, in the opinion of the court.

*Hatch & Webster*, for the orator.

I. Vincent's mortgage was not foreclosed. No evidence of compliance with the statute as to *entry*. Answers are contradicted as to *possession;* and no allegation in answers, of *notice.* No proof that Johnson held possession for Vincent. *Clarke* v. *White*, 12 Peters 178; 2 Story's Eq. 745, sec. 1529; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 87.

If Johnson did hold under Vincent, the possession was fraudulent, and insufficient to foreclose the mortgage. Comp. Stat., ch. 137, sec. 14, p. 292; Laws of N. H. 196, Ed. of 1815; *Kittredge* v. *Bellows*, 4 N. H. 433; *Thayer* v. *Smith*, 17 Mass. 431; *Haines* v. *Beach*, 3 Johns. Ch. 459; 5 Conn. 531; *Downer* v. *Clement*, 11 N. H. 40; *Gilman* v. *Hidden*, 5 N. H. 30; *Coburn* v. *Pickering*, 3 N. H. 415; 1 Greenleaf's Cruise, book 2, p. 218, n.; *Botham* v. *McIntire*, 19 Pick. 346, 7.

II. There is evidence of collusion between Handy and Johnson to foreclose the mortgage and shut out creditors, and that Handy holds the property under some secret trust for Johnson.

III. The equities are in the plaintiff's favor.

*Hackett*, for the defendants.

I. The first position of the plaintiff is that the mortgage is not foreclosed, because there is no evidence of a compliance with the statute.

The answers of both defendants allege a foreclosure, setting forth the time when the entry was made, and the possession, &c.; and the answer of Handy, who claims to own the property, sets forth the facts which, under the statute, constitute a foreclosure. These facts are in no wise contradicted or controlled by evidence, and must be held to be evidence of the facts they assert.

Besides, the defendants have proved all the facts necessary to

constitute a foreclosure, and fully sustained the facts alleged in their answers.

II. But it is said that the answers are contradicted as to possession. I do not so understand the matter. There is no dispute about the fact that Johnson was in the *occupation* of the premises after the 14th of January, 1851, as the tenant of Vincent; and if there be any where in the proof any verbal disagreement between the answers and the proof, it must be in the inadvertant use of the word "possession" for "occupation," or some such verbal inaccuracy.

As to the notice, it is both alleged and proved.

III. But it is said that there is no proof that Johnson held possession for Vincent. The plaintiff refers to 2 Story Eq. 745, p. 1529, sec. 12; Peters 178; 2 Johns. Ch. 87, to show the rule in chancery "that if the answer of the defendant admits a fact, but insists upon matter by way of avoidance, the plaintiff need not prove the fact admitted, but the defendant must prove the matter in avoidance."

In the first place, I claim that the answer of both the defendants, that Johnson held the possession from January 14, 1851, to January, 14, 1852, as the tenant of Vincent, is responsive to the bill.

The answer is responsive to the charge in the bill and gives to the defendants the rights incident to an answer of that character.

But the defendants have proved by two witnesses the character of Johnson's occupation after January 14, 1851, and that he held it for Vincent, and as his tenant.

IV. But the plaintiff says that if Johnson did hold under Vincent, the possession was fraudulent and insufficient to foreclose the mortgage. But I find nothing in the numerous authorities cited under this head tending to support this proposition.

Our statute makes no distinction between the "possession" acquired under process of law, and "possession" acquired by peaceable entry; nor have I been able to find that this court have, in any case, intimated that there was any distinction. But

they have held that tenantry under a process of law against the tenant in possession, and a lease to the tenant for a year, and his occupation as such, perfected the foreclosure. *Kittredge* v. *Bellows*, 4 N. H. 424 ; 11 N. H. 474.

Besides, Handy, on the 14th of January, 1852, having Vincent's rights, (*Smith* v. *Smith*, 9 N. H. 55,) entered into possession of the premises, and has held the same from that day to this, claiming title, and had so held said premises more than a year before the plaintiff offered to redeem.

V. If there be, as the plaintiff says, any evidence of collusion between Johnson and Handy, I do not know where he finds it.

VI. But the plaintiff says that the *equities* are in his favor ; but we contend that the whole case shows that the " equities" are with Handy, who holds the legal title, and we think the court must so find.

EASTMAN, J. The facts in this case, as gathered from the bill, and from the answers, so far as they are responsive to the bill, and from the evidence, may be condensed into the following statement :

The defendant, Johnson, being the owner of a lot of land in Portsmouth, together with the rope-walk and machinery connected therewith, on the first day of October, 1850, mortgaged the same to one Vincent, to secure a note of that date for the sum of $1,644.78, payable to Vincent, or order, on demand, with interest.

On the 14th day of January, 1851, Johnson being then in possession of the premises, and the condition of the mortgage being broken, Vincent made a public, peaceable entry into the same, in the presence of Johnson and two or more witnesses, for the purpose of foreclosing his mortgage, and on that day leased the premises to Johnson for one year. Johnson acknowledged himself as tenant to Vincent, and occupied the premises as such tenant for the year, and paid the taxes. And on the 17th, 24th and 31st days of May, 1851, Vincent caused to be pub-

lished in the Portsmouth Journal a notice of his entry, and the purposes of the same, according to the provisions of the statute.

On the 14th day of January, 1852, Vincent, for the consideration of $1,752.47, sold and assigned to one Mathes, and the defendant Handy, the mortgage and note, together with all his title and interest in the estate, with all the benefit to be derived from the entry and possession, to foreclose the mortgage ; and Handy afterwards purchased the interest of Mathes and became sole owner.

Johnson and Handy formed a co-partnership in the rope making business, and from the 14th day of January, 1852, to the filing of their answers, occupied the premises as tenants of Mathes and Handy, and then of Handy.

For years previous to 1849, and up to January 14, 1851, Johnson was in possession of the premises as owner, so that from 1849 to the filing of the answers he was in possession either as owner or tenant.

On the 27th day of January, 1851, Johnson being indebted to the complainant upon a note of hand, a suit was commenced against him by the complainant, and all his interest in the premises attached. Judgment was subsequently obtained, and execution issued for the sum of $288.92 debt, and $16.23 costs. A levy was commenced upon the property within thirty days after the rendition of judgment, and on the 7th day of June, 1851, all the right in equity which Johnson had of redeeming the premises on the day of the attachment, was sold to the complainant and a deed given him by the officer, which was duly recorded and the execution returned September 15, 1851.

Neither the complainant nor his attorney knew that any steps had been taken to foreclose the mortgage, either by Vincent or Handy, till a short time before June 14, 1853. On that day he demanded of Handy an account of the amount due upon the mortgage, and offered to pay the same, with all legal costs and charges. Handy declined to give the account, and denied the right of the complainant to redeem the premises.

From this statement, which, it is believed, embraces substan-

tially all the important facts, it is apparent that the decision of the case must depend upon the validity of the foreclosure of the mortgage.

Prior to the passage of the act of July 4, 1834, no notice by publication in a newspaper was necessary to be given in any case of entry to foreclose. N. H. Laws, 486, Ed. 1830. And where possession followed the entry, it was not necessary to give notice of any kind. *Kittredge* v. *Bellows*, 4 N. H. 433 ; *Gilman* v. *Hidden*, 5 N. H. 30 ; *Downer* v. *Clement*, 11 N. H. 40.

The act of 1834 requires notice by publication, and the Revised Statutes in like manner provide, that, where possession is taken without process of law, notice of the entry and its purposes shall be given in the same way ; and that a similar notice shall be given where the mortgagee, being in possession, is holding it for the purpose of foreclosing the right to redeem.

The act of 1854 has changed the law in regard to notice, where the mortgagee is in possession. But that act has no bearing upon this case, both because it was passed subsequent to the institution of these proceedings, and because the foreclosure was not made by a mortgagee in possession, but by an entry and possession.

The second mode of foreclosing is as follows: " By peaceable entry into the mortgaged premises, and continued, actual, peaceable possession thereof for the space of one year, and by publishing in some newspaper, printed in the same county, if any there be, otherwise in some newspaper printed in some adjoining county, three weeks successively, a notice, stating the time at which such possession taken for condition broken commenced, the object of such possession, the name of the mortgager and mortgagee, the date of the mortgage, and a description of the premises, the first publication to be six months at least before such right to redeem would be foreclosed." Rev. Stat., chap. 131, sec. 14.

And by the 16th section of the same chapter it is provided that the affidavit of the party making any entry into real estate,

and the witnesses thereto, as to the time, manner and purposes of such entry, and a copy of the published notice, verified by affidavit as to the time, place, and mode of publication, recorded in the registry of deeds for the county in which the lands lie, shall be evidence of such entry and publication.

After an entry is made by the mortgagee, possession may be held by him through a tenant, and such possession, being actual and peaceable for a year, is as good as though held by the mortgagee in person. *Kittredge* v. *Bellows*, 4 N. H. 424; *Batchelder* v. *Robinson*, 6 N. H. 13.

In *Deming* v. *Comings*, 11 N. H. 474, Cook, owning the premises, mortgaged them to Spaulding, and then sold and conveyed the same to Comings, the defendant. Spaulding assigned the mortgage, and Comings, upon a suit of possession being issued, became tenant of the assignee, and agreed to pay him rent; and it was decided that possession, thus held by the tenant for the term of one year, would foreclose the mortgage. *Parker*, C. J., says: "This was a good possession for the purpose of foreclosure. Peaceable possession, by the defendant, as tenant, under the agreement, for the term of one year, without any attempt to redeem, would operate as a foreclosure of the mortgage."

In the present case, all the requisitions of the statute were complied with in the foreclosure. On the 14th of January, 1851, before the complainant had commenced his suit against Johnson and made his attachment, Vincent, the mortgagee, entered upon and took peaceable possession of the premises in the presence of Johnson, the mortgager, and two or three others, and at the same time publicly declared that he took possession for the purpose of foreclosing his mortgage. Johnson, on the same day, agreed to attorn to Vincent, and took a lease for one year, and held during that time as tenant of Vincent. In May, following the entry, more than six months before the right to redeem would be foreclosed, Vincent published in the Portsmouth Journal a notice of his entry, containing all the formalities prescribed by the 14th section of the statute cited, and subse-

quently caused to be recorded, in the registry of deeds for the county, the evidence of the entry and notice, according to the provisions of the 16th section.

At the time Vincent entered upon the premises no one had any rights therein except Johnson and himself. The complainant's attachment had not then been made; and, independent of statute provisions, and under the authorities in other jurisdictions requiring notice to those interested, sufficient notice would seem to have been given; for Johnson was present when possession was taken, knew its object, and acknowledged his tenancy. *Thayer* v. *Smith,* 17 Mass. 429; *Newhall* v. *Wright,* 3 Mass. 153; 13 Mass. 314.

There is no provision of law that required Vincent or his assignees to ascertain who were the creditors of Johnson, or who might subsequently become interested in the premises; none that required him to give a new or different notice of the proceedings to foreclose to any such parties. Even subsequent mortgagees are entitled to no notice, other than such as they may gain from the publication required by the statute. *Downer* v. *Clement,* 11 N. H. 40.

The general publication of notice of an entry to foreclose in some newspaper printed in the county, must, under the statute, be held to be a sufficient notice to all persons interested, that the foreclosure has been commenced. If this notice is not actually brought home to a party interested to know of the entry, as was the fact with the complainant, it must be treated as a misfortune for which there is no remedy.

There was no attempt to redeem the premises until June, 1853, nearly two years and a half after Vincent entered to foreclose, and nearly a year and a half after the assignment to Mathes and Handy. The rights acquired by Vincent, by his entry, possession and notice, and all benefits of the foreclosure, passed to Handy and Mathes by the assignment; and the tender made by the complainant was ineffectual for any purpose, unless fraud could be shown in the foreclosure. *Hills* v. *Elliott,* 12 Mass. 26; *Deming* v. *Comings,* 11 N. H. 474. In *Hills* v.

*Elliott* it was held that where a mortgage is assigned, the assignee is put in the place of the mortgagee, to all intents and purposes.

We arrive then at the conclusion that this foreclosure was good, unless it can be impeached for fraud. And after a careful examination of the evidence, and also the answers, and applying to the latter the acknowledged rule that they are not evidence for the defendants, except so far as they are responsive to the bill, we think that we cannot pronounce the foreclosure to have been fraudulent.

There is some evidence which would be competent to be submitted to a jury, as tending to show collusion. The taxation of the property, in 1851, for double the amount of the mortgage, and the unvaried possession of the premises by Johnson, as well as some other facts, would be competent. But there is nothing showing that Johnson had any ability to pay the mortgage, or that he has now any interest in the premises. As suggested by counsel, also, property of this description must vary in its value from time to time, as business of the kind changes. The complainant knew of the mortgage, and was himself the purchaser and owner of the equity, before the foreclosure was completed. He could have ascertained, by inquiry, that the foreclosure was proceeding, and could have redeemed or taken the premises, had he seen fit.

The possession by Johnson was open to explanation. The stringent rule requiring a change of possession upon the sale of personal property, as shown by the authorities cited, does not apply to a case of this kind. Johnson could well enough be the tenant of the mortgagee, or his assignee, as we have already shown. In *Gilman* v. *Hidden*, 5 N. H. 30, the mortgager and mortgagee both resided upon the premises, and made one family; and yet it was held that the mortgage was foreclosed. The court say: The circumstance that the mortgager also lived upon the land, does not seem to be material, because he was apprised that the tenant was holding the land after condition broken, with a view to foreclose the right to redeem.

We think we cannot infer fraud from the facts in this case; and the foreclosure being valid, the title to the property became perfect in Handy, and the complainant had no right to require of him an account, or to redeem the premises. The bill must, therefore, be dismissed.

As to costs, the amended answers were material, as also the evidence taken to support them. Terms must, therefore, be imposed for the amended answers and the delay occasioned thereby, and the amount be deducted from the defendants' bill of costs.

*Bill dismissed, with costs.*